UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TABATHA SCHEON SEIBERT,

    Plaintiff                                  Civil Action No. 17-13590

v.                                            HON. ROBERT H. CLELAND
                                                U.S. District Judge
                                                HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL          U.S. Magistrate Judge
SECURITY,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Tabatha Scheol Seibert ("Plaintiff") brings this action under 42 U.S.C. § 405(g) challenging a final decision of Defendant Commissioner ("Defendant") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment [Docket #20] be GRANTED and that Plaintiff's Motion for Summary Judgment [Docket #17] be DENIED.

## PROCEDURAL HISTORY

On November 10, 2014, Plaintiff filed an application for DIB, alleging an onset date of March 1, 2014 (Tr. 138). After the initial denial of her claim, Plaintiff requested an administrative hearing, held on April 27, 2016 in Livonia, Michigan before Administrative Law Judge ("ALJ") Martha M. Gasparovich (Tr. 37). Plaintiff, represented by attorney John

Walt, testified (Tr. 43-57), as did Vocational Expert ("VE") Diane Regan (Tr. 58-61). On August 25, 2016, ALJ Gasparovich found Plaintiff was not disabled (Tr. 20-32). On August 29, 2017, the Appeals Council denied review (Tr. 1-3). On November 2, 2017, Plaintiff filed for judicial review of the Commissioner's final decision in this Court.

## BACKGROUND FACTS

Plaintiff, born January 6, 1967, was 49 when the ALJ issued her decision (Tr. 32, 138). She completed two years of college and worked previously as a waitress (Tr. 167). She alleges disability resulting from the conditions of lupus, Carpal Tunnel Syndrome ("CTS"), and arthritis (Tr. 166).

**A. Plaintiff's Testimony**

Plaintiff offered the following testimony:

She lived in Wayne, Michigan (Tr. 43). In addition to her former work as a waitress, she worked for a short period as a cashier (Tr. 44). She stopped work after experiencing burning foot pain, hand numbness, and difficulty lifting and carrying even small weights (Tr. 46-47). She experienced renewed hand numbness only six months after undergoing bilateral carpal tunnel release surgery (Tr. 47). In addition, she experienced chronic flu-like achiness and face and body rashes (Tr. 47-48). She coped with the rashes and foot pain with topical creams (Tr. 48). She saw a psychiatrist on one occasion and received regular mental health counseling to help her through a difficult divorce and to come to terms with her physical limitations (Tr. 52, 56). Her psychological limitations included confusion, disorientation, and seeing spots (Tr. 57). She did not experience problems getting along with others (Tr. 57). She currently took Oxycodone for pain, Neurontin for CTS, and Procardia for hypertension (Tr. 53).

Plaintiff was unable to stand for more than three minutes, stand for ten, or walk the distance of more than six houses (Tr. 54). She used a cane for walking significant distances (Tr. 54). She was unable to lift more than five pounds due to hand numbness (Tr. 54). On a typical day she was able to complete light house-keeping chores by taking intermittent breaks (Tr. 55). She drove regularly and was able to grocery shop by herself (Tr. 55). She experienced sleep disturbances due to leg spasms (Tr. 55).

### B. Medical Evidence[1]

#### 1. Treating Sources

In July, 2013, primary care physician Satinder Aggarwal, M.D. noted a full range of motion and strength and a normal gait (Tr. 291). In November, 2013, Plaintiff sought treatment for pain, weakness, spasms, arthritis, and right arm swelling (Tr. 202-206). Plaintiff reported that the condition of CTS was exacerbated with repetitive movement (Tr. 202). Anne Abrahamson, M.D. observed difficulty with heel toe walking (Tr. 204). Dr. Abrahamson's December, 2013 and January, 2014 records note no significant change in Plaintiff's condition (Tr. 206, 2011). Plaintiff exhibited a normal mood and effect (Tr. 208). Clinical neurological tests were unremarkable but multiple trigger points were found in the muscles surrounding the spine (Tr. 209, 214). Plaintiff reported that she limped after being on her feet for two hours and that her right ankle had been swelling (Tr. 212).

In February, 2014, Plaintiff reported that the body pain had worsened (Tr. 216). Dr. Abrahamson noted that Plaintiff was "well-appearing" (Tr. 218). The same month, Dr. Aggarwal noted a normal gait and motor strength in all extremities (Tr. 295). The following

---

[1] Medical evidence predating the alleged onset of disability by more than one year, while reviewed in full, is not included in the present discussion.

month, Plaintiff reported worsening symptoms of CTS (Tr. 221).  April, 2014 records by Dr. Abrahamson again note difficulty with heel toe walking (Tr. 228).  June, 2014 records state that Plaintiff continued to use wrist braces and took two weeks off work due to hand pain (Tr. 235-236).  The following month, she demonstrated a normal range of shoulder motion with pain, upper extremity numbness, and lower extremity swelling (Tr. 242).

Dr. Abrahamson's August, 2014 records note Plaintiff's report of increased leg pain when walking and continual hand and wrist pain (Tr. 250).  Dr. Aggarwal's records from the same month note a full range of motion, normal gait, and normal muscle strength (Tr. 297).  In September, 2014, Dr. Abrahamson prescribed a topical steroid for a facial rash (Tr. 270).  Plaintiff reported relief from neck and upper back pain with the use of Botox injections (Tr. 349). October, 2014 records note continued neck and upper back pain (Tr. 256).  Plaintiff demonstrated a full range of lower extremity motion and normal strength (Tr. 257).  She was advised to continue using the wrist braces (Tr. 259).  She did not exhibit problems walking (Tr. 356).

Dr. Aggarwal's notes from the same month note that Plaintiff was referred to a psychiatrist due to symptoms of Attention Deficit Hyperactivity Disorder ("ADHD") including as poor concentration and "scattered" thinking (Tr. 299). Dr. Aggarwal's treating records note normal judgment and insight with a normal mood and affect (Tr. 299). November, 2014 neurological records note a diagnosis of Lupus (Tr. 281).  Plaintiff demonstrated good concentration and memory (Tr. 282). Dr. Abrahamson's records note her report of burning foot pain (Tr. 359).  Neurological testing of the eyes was abnormal (Tr. 284).  In December, 2014, Plaintiff reported burning foot pain, blurred vision, and hand pain and swelling (Tr. 262, 319-320, 364).  She appeared fully oriented (Tr. 263).  EMG/nerve conduction studies of the upper and lower extremities from the same month show moderate

sensory polyneuropathy in all extremities and moderate bilateral CTS greater on the left than right (Tr. 461-462). An MRI of the head and neck was unremarkable (Tr. 319).

Dr. Abrahamson's January, 2015 records note neck stiffness (Tr. 369). An MRI of the head and neck was normal (Tr. 475). A physical examination by Dr. Aggarwal from the same month was unremarkable (Tr. 492). A February, 2015 ophthalmological examination yielded no evidence of retinal or optic nerve damage (Tr. 324). Dr. Abrahamson's records from the same month note full lower extremity strength and a normal gait (Tr. 376-377). Records by Nilofer Nisar, M.D. from the same month note a normal gait (Tr. 452). May and June, 2015 examination records by Dr. Aggarwal were unremarkable (Tr. 502, 506). Plaintiff denied memory changes, anxiety, or depression (Tr. 506). Dr. Abrahamson's June, 2015 records note Plaintiff's report that hand problems prevented her from working as a waitress (Tr. 384). Plaintiff reported that she had a 14-year-old daughter and "also care[d] for her granddaughter" (Tr. 384). Records from the next month note that wrist braces partially relieved the hand numbness (Tr. 398). August, 2015 records note that Valium decreased both muscle spasms and anxiety (Tr. 403). The following month, Plaintiff reported that Neurontin relieved foot pain (Tr. 408). October, 2015 records by rheumatologist Neil Levitt, M.D. note normal muscle strength, a good range of motion, and a normal gait (Tr. 337). Records from the following month note unremarkable blood work and a normal physical examination (Tr. 321-332). December, 2015 records note that Plaintiff walked slowly with an antalgic gait (Tr. 426).

January, 2016 records by Dr. Abrahamson note alternatively that Plaintiff was able to walk normally (Tr. 421) and with an antalgic gait (Tr. 431). Nerve Conduction/EMG testing of the bilateral upper extremities were inconclusive (Tr. 448-449). An examination by Dr. Aggarwal was unremarkable (Tr. 515-516). Records by Dr. Abrahamson from the

following month and March, 2016 note full strength in all extremities (Tr. 435, 440). Nerve conduction/EMG studies of the lower extremities from the same month were consistent with sensory polyneuropathy (Tr. 451).

March, 2016 mental health records note that Plaintiff was going through an "'ugly divorce'" due to her husband's substance abuse and criminal record (Tr. 525, 536). Plaintiff appeared "overwhelmed" but fully oriented with normal memory, judgment, insight, and intelligence (Tr. 527).

April, 2016 records note that Plaintiff had been "tapering off" pain medication (Tr. 443). Dr. Aggarwal's records noted that Plaintiff denied memory problems, anxiety, or depression (Tr. 519). June and July, 2016 records by rheumatologist Mustapha Mallah, M.D. note Plaintiff's report that she previously took Lyrica (Tr. 524). Plaintiff reported constant fatigue and left arm pain (Tr. 523). Dr. Mallah prescribed Celebrex (Tr. 523).

In June, 2016, Dr. Aggarwal completed an assessment of Plaintiff's work-related activities, finding that she was unable to lift or carry even 10 pounds; stand or walk for two hours a workday; or sit for six hours (Tr. 548). He found that Plaintiff was limited to occasional balancing, kneeling, crouching, and climbing ramps and stairs but was unable to stoop, crouch, or climb ladders, ropes, or scaffolds (Tr. 549). He found a limited ability to reach and feel due to neuropathy and that Plaintiff experienced limitations in discerning colors and in "field of vision" (Tr. 550). He found that Plaintiff should avoid concentrated exposure to temperature extremes, airborne pollutants, and hazards such as machinery and heights (Tr. 551). Dr. Aggarwal noted diagnoses of Lupus and Raynaud's disease causing numbness of the upper and lower extremities (Tr. 553).

## 2. Non-Treating Sources

In February, 2015, Hugh Bray, Ph.D. performed a consultative examination on behalf of the SSA, noting Plaintiff's report of anxiety and ADHD (Tr. 312). She reported occasional feelings of being overwhelmed and "fidgety" (Tr. 312). She described her physical condition as "poor" (Tr. 313). Dr. Bray noted that she exhibited normal speech, a cooperative attitude, and good judgment (Tr. 314). He noted mild impairment in concentration, persistence, pace, and effort, and moderate impairment in the ability to withstand workplace stress and pressure (Tr. 316).

Later the same month, Leonard C. Balunas, Ph.D. performed a non-examining psychological assessment on behalf of the SSA, finding that as a result of organic and anxiety-related mental disorders, Plaintiff experienced mild limitation in activities of daily living and social functioning and moderate limitation in concentration, persistence, or pace (Tr. 70).

In May, 2015, Quan Nguyen, M.D. performed non-examining physical assessment on behalf of the SSA, finding that Plaintiff could lift 20 pounds occasionally and 10 frequently; sit, stand, and walk for six hours in an eight-hour workday; and push and pull without limitation (Tr. 72). In regard to postural limitations, Dr. Nguyen found that Plaintiff was limited to frequent balancing, stooping, kneeling, crouching, crawling, and climbing ramps/stairs; and occasional climbing of ladders/ropes/scaffolds (Tr. 72-73). Dr. Nguyen did not find any manipulative, visual, communicative, or environmental limitations (Tr. 73).

### C. Vocational Expert Testimony

VE Diane Regan classified Plaintiff's previous work as a waitress as semiskilled at the light exertional level[2] (Tr. 59). The ALJ then posed the following hypothetical question, taking into account Plaintiff's age, educational level, and work experience:

> Assume the individual is unable to stand and walk more than six hours in an eight-hour day. Sitting would be unlimited, but there would be a need for a sit/stand option at least every 30 to 45 minutes. The individual could lift no more than 20 pounds occasionally and 10 pounds frequently; could only stoop, squat, climb, balance, crouch, crawl or kneel occasionally; would need to avoid reaching overhead and pushing and pulling activities; would be limited to a low stress environment defined as no quick decision-making and no quick judgment required on the job. The individual would also be unable to perform jobs that are fast paced, high production or frequent changes in task, expectations or locations. Could such an individual perform the work you have described as [Plaintiff's] past work? (Tr. 59-60).

The VE testified that the above-described hypothetical individual could not perform the work of a waitress but could perform the light, unskilled work of a packer (150,000 jobs in the national economy); sorter (100,000); and inspector (100,000) (Tr. 60). The VE testified further that if the individual were unable to stand or walk for more than two hours each workday or lift more than 10 pounds, she could perform the sedentary, unskilled work of a sedentary inspector (100,000); sorter (120,000); and assembler (150,000) (Tr. 60). The VE stated that a limitation to occasional fine manipulative activity, along with a preclusion on forceful gripping would eliminate the assembler and sorter positions (Tr. 60). She stated that the need to take unscheduled breaks each workday for 20 to 30 minutes, or the need to

---

[2]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

miss up to three days of work each month would eliminate all competitive employment (Tr. 61). The VE stated that her testimony was based on the information found in the *Dictionary of Occupational Titles* ("*DOT*"), except for the testimony regarding a sit/stand option, unscheduled breaks, and work absences, which was based on her own professional experience (Tr. 61).

### D. The ALJ's Decision

Citing Plaintiff's medical records, the ALJ determined that Plaintiff experienced the severe impairments of "discoid lupus; cervical degenerative disc disease; bilateral status post [CTS]; sensory polyneuropathy; Raynaud's syndrome; and Attention Deficit Disorder," but found that none of the conditions met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 23). The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following additional restrictions:

> [S]he is unable to stand/walk more than six hours in an eight-hour day. Her sitting would be unlimited, but there would be a need for a sit/stand option at least every 3-45 minutes. She could lift no more than twenty pounds occasionally and ten pounds frequently. she could only stoop, squat, climb, balance, crouch, crawl, or kneel occasionally. She would need to avoid overhead, and pushing and pulling activities. She can do no forceful gripping or twisting such as opening a sealed bottle or using a screwdriver. She can only occasionally perform fine manipulation or fingering. She is limited to low stress work defined as no quick decision making and no quick judgment required on job. She would be unable to perform jobs that are fast pace, high production or frequent changes in task expectations or locations (Tr. 25).

Citing the VE's testimony, the ALJ found that Plaintiff could perform the exertionally light jobs of packer and inspector (Tr. 31, 60).

The ALJ discounted Plaintiff's allegations of disability. She cited a rheumatologist's November, 2015 records showing normal laboratory studies and a full range of motion in all extremities (Tr. 26-27). She cited February and October, 2015 examination records showing a normal gait and full range of motion (Tr. 28).

The ALJ found that Dr. Aggarwal's June, 2016 assessment that Plaintiff was unable to lift even 10 pounds or stand/walk for more than two hours each workday was not supported by the objective or clinical evidence (Tr. 30). She accorded the assessment only "some weight," noting that the assessment stood at odds with Dr. Aggarwal's clinical observations of a full range of motion and no swelling or deformities (Tr. 30). The ALJ also accorded only "some weight" to Dr. Nguyen's May, 2015 non-examining assessment, noting that the subsequently created evidence supported a more restricted RFC (Tr. 29-30).

### **STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

**FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

**ANALYSIS**

**A. The Treating Physician Analysis**

In her first argument for remand, Plaintiff contends that the ALJ's rejection of Dr. Aggarwal's June, 2016 assessment failed to comply with either the procedural or substantive requirements of the "treating physician rule."[3] *Plaintiff's Brief,* 14-17, *Docket #17,* Pg ID

---

[3] Since Plaintiff filed her application for benefits, the Social Security Administration amended the treating physician rule. However, the rule according controlling weight to a treating source applies to this claim, which was filed well before March 27, 2017. *See* 20 C.F.R. § 404.1527(c). In contrast, under the new rules "adjudicators will not assign a weight, including controlling weight, to any medical opinion . . . ." 82 FR 15263-01; 2017 WL 1105348 (March 27, 2017).

621. Plaintiff argues that the records of Dr. Abrahamson, another long-term treating source, support Dr. Aggarwal's finding that Plaintiff was unable to perform even sedentary work. *Id.* at 15.

Case law in effect at the time of Plaintiff's application requires that "if the opinion of the claimant's treating physician is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight." *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009)(internal quotation marks omitted)(*citing Wilson v. CSS*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ). In the presence of contradicting substantial evidence however, the ALJ may reject all or a portion of the treating source's findings, *Warner v. Commissioner of Social Sec.,* 375 F.3d 387, 391-392 (6th Cir. 2004), provided that he supplies "good reasons" for doing so. *Wilson*, at 547; 20 C.F.R. § 404.1527(c)(2); SSR 96–2p, 1996 WL 374188, *5 (1996). In explaining the reasons for giving less than controlling weight to the treating physician's opinion, the ALJ must consider (1) "the length of the ... relationship" (2) "frequency of examination," (3) "nature and extent of the treatment," (4) the "supportability of the opinion," (5) the "consistency ... with the record as a whole," and, (6) "the specialization of the treating source." *Wilson*, at 544.

As noted above, in June, 2016 Dr. Aggarwal completed a written assessment of Plaintiff's work-related abilities, finding in relevant part that she was unable to lift/carry even 10 pounds; stand/walk for two hours out of eight; or perform any stooping or crouching (Tr. 548-549). The ALJ accorded only "some weight" to the assessment, noting that it appeared to be based on Plaintiff's unsubstantiated reports rather than the objective or clinical evidence (Tr. 30). The ALJ cited April, 2016 examination records noting a full range of motion, "no swelling, and no deformities" and a number of other records showing full muscle

strength and a normal gait (Tr. 30).

The ALJ did not err in discounting Dr. Aggarwal's finding that Plaintiff was unable to perform even sedentary work. The ALJ acknowledged that from July, 2013 forward, Plaintiff reported muscle weakness, extremity swelling, and burning hand and foot pain (Tr. 27). However, she noted that upon examination, Plaintiff regularly exhibited a normal gait, good muscle strength, and a normal range of motion (Tr. 27). She cited Dr. Levitt's November, 2015 findings of full muscle strength in all extremities and noted that the blood testing for rheumatological disorders was normal (Tr. 26). She noted that as of April, 2016, Plaintiff was in the process of tapering off her pain medication (Tr. 28).

This Court's review of the medical transcript supports the ALJ's rejection of Dr. Aggarwal's assessment. Dr. Aggarwal's own treating records show that Plaintiff repeatedly demonstrated a normal gait, good muscle tone, and a good range of motion (Tr. 291, 202-206, 242, 295, 297, 502, 506). These findings, taken together with Dr. Nguyen's finding that Plaintiff could perform light work, constitute substantial evidence in support of the rejection of Dr. Aggarwal's assessment (Tr. 72). The ALJ also complied with the procedural requirements of the treating physician analysis. Her discussion of the treating records acknowledges Dr. Aggarwal's long-term treating relationship and the frequency and nature of the treatment. She cited the records by Dr. Aggarwal from July, 2013 through the June, 2016 assessment (Tr. 27-28).

Given that substantial evidence supports the ALJ's conclusions, the fact that another treating source's findings some contain some support for Dr. Aggarwal's assessment is of no import. While Dr. Abrahamson periodically observed physical limitations consistent with Dr. Aggarwal's assessment, her records also contain support for the finding that Plaintiff was capable of exertionally light work. In February, 2014, she noted that Plaintiff was "well-

appearing" with a normal gait and full muscle strength (Tr. 218, 295). In February, 2015, she again noted full muscle strength and a normal gait (Tr. 376-377). In September, 2015, Plaintiff reported to Dr. Abrahamson that Neurontin relieved her foot pain (Tr. 408). Dr. Abrahamson noted full muscle strength as of March, 2016 (Tr. 435, 440).

Moreover, the ALJ did not err in "adopting" Dr. Nguyen's finding that Plaintiff could perform light work. First, while the ALJ adopted Dr. Nguyen's findings regarding the exertional abilities, the RFC found in the administrative opinion contains additional limitations (Tr. 29). For example, the ALJ found that Plaintiff's ability to perform light work was modified by the need for a sit/stand option (Tr. 25, 72). While Dr. Nguyen found that Plaintiff could perform postural activity on a frequent basis (72-73), the ALJ limited Plaintiff to at most *occasional* postural activity (Tr. 25). Although Dr. Nguyen declined to find any manipulative limitations, the RFC precludes forceful gripping or twisting with only occasional fine manipulation and fingering (Tr. 25).

Second, while Plaintiff faults the ALJ for adopting Dr. Nguyen's "outdated" May, 2015 assessment over Dr. Aggarwal June, 2016 findings, she fails to show how her condition worsened subsequent to May, 2015 or that the ALJ overlooked the records postdating Dr. Nguyen's assessment. Plaintiff is correct that "[w]hen an ALJ relies on a non-examining source who 'did not have the opportunity to review' later submitted medical evidence, especially when that evidence 'reflects ongoing treatment,'" the courts "require 'some indication that the ALJ at least considered these new facts before giving greater weight to an opinion that is not based on a review of a complete case record.'" *Brooks v. Comm'r of Soc. Sec.,* 531 Fed.Appx. 636, 642 (6th Cir. August 6, 2013)(*citing Blakley v. Comm'r of Soc. Sec.,* 581 F.3d 399, 409 (6th Cir. 2009))(internal citations and punctuation omitted).

However, the record shows that the ALJ "considered" the "new facts" in making her

determination. She devoted four paragraphs to the records created after May, 2015, noting that within that time frame, Plaintiff demonstrated a full range of motion and good strength (Tr. 28). She noted that Plaintiff was in the process of reducing her pain medication as April, 2016 (Tr. 28). The ALJ also acknowledged that the EMG testing done January and March, 2016 showed sensory polyneuropathy (Tr. 28). Despite the good clinical reports, the ALJ noted that the more recent evidence showed a greater degree of limitation than that found by Dr. Nguyen, including a sit/stand option, a greater degree of postural limitation, and manipulative limitations in the RFC (Tr. 28-29). She concluded that because the more recent records suggested a greater degree of limitation, Dr. Nguyen's assessment was entitled to only "some weight" (Tr. 29-30).

Because the ALJ's partial rejection of Dr. Aggarwal's assessment is well supported and articulated, a remand on this basis is not warranted.

### B. The Hypothetical Question and RFC

Plaintiff also contends that the RFC found in the administrative opinion includes limitations not found in the corresponding hypothetical question to the VE. *Plaintiff's Brief* at 18-19. She argues that vocational testimony did not include findings on how a preclusion on "forceful gripping or twisting" and only occasional "fine manipulation or fingering," (found in the RFC) would affect the ability to perform exertionally *light* work *Id.* (*citing* Tr. 25, 60) She maintains that the VE testimony was limited to the effect of such manipulative limitations on *sedentary* work. *Id.*

Plaintiff is correct that a hypothetical question, and by extension the RFC found in the administrative opinion, constitutes substantial evidence only if it accurately reflects the claimant's physical and mental impairments. *Ealy v. Comm'r of Soc. Sec.,* 594 F.3d 504, 516 (6th Cir. 2010). While the Sixth Circuit has rejected the proposition that all of the claimant's

maladies must be listed verbatim, "[t]he hypothetical question ... should include an accurate portrayal of [a claimant's] physical and mental impairments." *Webb v. Commissioner of Social Sec.,* 368 F.3d 629, 632 (6th Cir.2004). It is well settled that vocational testimony given in response to a question that does include all of a claimant's relevant limitations does not constitute substantial evidence. *Teverbaugh v. Comm'r of Soc. Sec.*, 258 F.Supp.2d 702, 706 (E.D. Mich. 2003) (Roberts, J)(reversible error for ALJ to rely upon unsupported job findings in making a Step Five determination).

Plaintiff's argument that the VE's testimony addressed the effect of "forceful gripping or twisting" and only occasional "fine manipulation or fingering," on the sedentary but not light job findings represents a misreading of the record. During the hearing, the ALJ first posed a set of limitations to the VE describing a range of light work, omitting manipulative limitations (Tr. 59-60). In response, the VE found that the so-described individual could perform the light work of a packer, sorter, or inspector (Tr. 60). The ALJ then modified the question, asking if the non-exertional restrictions, coupled with a limitation to *sedentary* work, would change the job findings (Tr. 60). The VE stated that the same restrictions, along with a limitation to sedentary work would allow for the work of an inspector (sedentary), sorter (sedentary), and assembler (Tr. 60). The ALJ then asked if the individual were further limited to occasional fingering and fine manipulation on an occasional basis with no forceful gripping or twisting, "would that affect the ability to perform the jobs you've listed, *any of them*?" (Emphasis added). The VE responded that the manipulative limitations would eliminate the assembler and sorter positions (Tr. 60). In making the finding that Plaintiff could perform light work, the ALJ, reflecting this testimony, found that she could perform the exertionally light work of a packer or inspector (Tr. 31). While Plaintiff argues that the VE was referring only to the effect of manipulative limitations on the sedentary jobs, the

ALJ's question as to whether the manipulative limitations would affect *any* of the jobs already listed by VE, indicates that the question and VE's response included both the sedentary *and* light job findings.

Moreover, the exertionally light jobs of packer and inspector with respectively 150,000 and 100,000 positions in nationally economy constitutes a "significant" number of jobs by any standard. *See Taskila v. Commissioner of Social Sec.*, 819 F.3d 902, 905 (6th Cir. 2016)("Six thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'"). Accordingly, ALJ's Step Five finding that Plaintiff could perform a significant range of other work is supported by the vocational testimony.

My recommendation to uphold the administrative findings should not be read to trivialize Plaintiff's legitimate limitations. However, because the ALJ's findings are well within the "zone of choice" accorded the administrative fact-finder, they should not be disturbed by this Court. *Mullen v. Bowen, supra.*

## CONCLUSION

I recommend that Defendant's Motion for Summary Judgment [Docket #20] be GRANTED and that Plaintiff's Motion for Summary Judgment [Docket #17] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v.*

*Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection #1," "Objection #2," etc., and any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," *etc.*

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: January 3, 2018

s/R. Steven Whalen
R. STEVEN WHALEN
U.S. MAGISTRATE JUDGE

### CERTIFICATE OF SERVICE

I hereby certify on January 3, 2018 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to non-registered ECF participants on January 3, 2018.

s/Carolyn M. Ciesla
Case Manager for the
Honorable R. Steven Whalen